PECK & PECK (NEW YORK), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE PECK-PECK CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 99288, 99314.    Promulgated August 29, 1940.

*Andrew B. Trudgian, Esq.,* and *Milton P. Kupfer, Esq.,* for the petitioner.

*Leonard A. Spalding, Jr., Esq.,* for the respondent.

652

OPINION.

MURDOCK: Peck & Peck, the parent, owned all of the 1,000 outstanding shares of its subsidiary, the Peck-Peck Corporation. The estate of George F. Peck was indebted to the subsidiary in the amount of $111,458.09 and owned stock of the parent. The stock was the only asset from which it could pay the debt. The attorney for the corporations put in effect a plan whereby the amount of the debt would be eliminated from the working capital of the corporations. The estate transferred 326 shares of parent stock to the subsidiary in cancellation of the debt and received $206.69 in cash, being the excess of the fair market value of the shares over the amount of the debt. The subsidiary then transferred the 326 shares of parent stock and $2,106.90 in cash to the parent in exchange for 176 shares of subsidiary stock. The cash was equal to the difference in the fair market values of the two blocks of stock. The parent then decreased its capital by the 326 shares and the subsidiary decreased its capital by the 176 shares. All of the foregoing steps were part of a single plan to eliminate the amount of the debt from the working capital of the two corporations. The parent still owned all of the outstanding stock of the subsidiary, now 824 shares. The debt due the subsidiary was canceled. The outstanding capital stock of the parent consisted of 1,674 shares after the retirement of the 326 shares.

The Commissioner in determining the deficiencies against the parent held that it realized a profit of $17,656.32 from the exchange of the subsidiary stock for its own stock. The profit was the difference between its basis for gain on the subsidiary stock and the fair market value of its own stock plus the cash received.

The Commissioner contends that the 176 shares were disposed of by the parent in a partial liquidation of the subsidiary and the gain of the parent is taxable under section 115 (i) and (c) of the Revenue Act of 1934. The petitioners do not dispute the amount of the gain or the fact that a gain was realized from the exchange. They also concede that there was a partial liquidation of both corporations but they point out, *inter alia*, that the gain to a distributee from a partial liquidation is recognized only to the extent provided in section 112. They argue that the transactions between them constituted a reor-

ganization within section 112 (g) (1) (C), (D), and (E),[1] since there was a transfer by the parent of a part of its assets (176 shares of subsidiary stock) to another corporation, the subsidiary, and immediately afterwards the transferor was in control of the transferee, since there was a recapitalization of the subsidiary, and since there was a mere change in form. They then conclude that the provisions of section 112 (b) (3) and (c) (1) apply and the gain is recognized only to the extent of the cash received.

The respondent maintains that there was no reorganization within section 112 (g) (1) (C), and (b) (3) and (c) (1) of section 112 do not apply. He says that section 112 (g) (1) (C) does not cover a transaction where the transferor was in control of the transferee both before and after the transfer, but includes only transactions in which control was acquired by the transfer. He cites no authority for this proposition and we know of none. The definition contains no such restriction and none need be implied to carry out the intent of Congress. If corporation A transferred 25 percent of its assets to corporation B in exchange for all of B's stock, clearly there would be a reorganization within section 112 (g) (1) (C). If, thereafter, A transferred 33⅓ percent of its remaining assets to B and continued in control of B, there would be no material difference between the two transfers so far as the words or purpose of section 112 (g) (1) (C) are concerned. The transactions involved herein were carried out for a real business purpose as opposed to any exogenous or tax avoidance purpose, so that cases like *Gregory* v. *Helvering*, 293 U. S. 465, do not apply. We conclude that there was a statutory reorganization, to which both the parent and subsidiary were parties.

The Commissioner argues that, in any event, the petitioner's gain does not escape recognition because of the provisions of section 112 (b) (3) and (c) (1),[2] since the subsection was intended to cover a

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.
     *     *     *     *     *     *
  (g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—
  (1) The term "reorganization" means * * * (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.
     *     *     *     *     *     *     *
  (b) EXCHANGES SOLELY IN KIND.—
  (3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.
  (c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—
  (1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

situation where a reorganization involves more than two corporations and does not cover a transfer of assets by a corporation in exchange for its own stock. He would apply section 115 (c). This same argument was made by the Commissioner and was rejected in *Winston Brothers Co.*, 29 B. T. A. 905; affd., 76 Fed. (2d) 381. There only two corporations were parties to the reorganization. The parent exchanged stock which it owned in the subsidiary for its own stock and the Board and the court held that the gain was not recognized because of section 112 (b) (3). See also *General Motors Corporation*, 35 B. T. A. 523; *Isidor Kahn*, 36 B. T. A. 954. We follow those decisions and reach the conclusion here that the gain is taxable only to the extent of the cash.

The petitioners make a further argument that, since the parent exchanged subsidiary shares for its own stock, which stock was to be and was retired, the parent was merely liquidating partially and realized no gain from the distribution of its assets in kind. Regulations 86, art. 22 (a)–21. Our holdings above makes unnecessary the consideration of this argument except as it may apply to the cash received by the parent. Clearly, the receipt of cash by the parent was not a distribution of its assets in kind. The question of gain or loss to a corporation from the acquisition and disposition of its own shares is a difficult one (*Niagara Share Corporation*, 30 B. T. A. 668; *National Home Owners Service Corporation*, 39 B. T. A. 753), but the cash was received by the parent not for its own shares but for shares of its subsidiary. It has not shown by facts or argument that the cash was not taxable gain.

The Commissioner has shown that he erred in allowing the Peck-Peck Corporation a deduction of $2,000 upon the transactions discussed herein. The petitioners make no argument to the contrary.

*Decision will be entered under Rule 50.*