## STOCK YARDS NAT. BANK OF SOUTH ST. PAUL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13085.

Circuit Court of Appeals, Eighth Circuit.

Feb. 18, 1946.

Grant W. Anderson, of Minneapolis, Minn., for petitioner.

Helen Goodner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

In its income tax report for the year 1939 petitioner claimed a loss of $16,155.16 on the sale of two farms, referred to in the record as the Stebbens farm and the McBride farm. It computed the loss claimed by assigning to the Stebbens farm a cost of $14,864.66 and to the McBride farm a cost of $2,600, and by deducting from this cost basis the amounts received on sales of the farms in 1939. The amounts received at these sales were $100 for the Stebbens farm and $1,209.50 for the McBride farm.

Respondent denied the loss claimed by petitioner, and in his notice of deficiency gave the following explanation for his action: "These farms together with other assets less liabilities were received by you in March 1938 in settlement of account with the Stock Yards Mortgage Co. A completed transaction was effected in 1938, and it is held that the value of farms when acquired constitutes their cost basis. Such value has been determined as being equivalent to the selling price in 1939. Accordingly no losses for income tax purposes were sustained on these sales."

The petitioner is a banking corporation. On March 28, 1938, Northwest Bancorporation owned 2,450 shares of the petitioner's 2,500 shares of common stock, 492 shares of a total of 500 shares of the stock of the Stock Yards Mortgage Company, and all of the stock of the Union Investment Company. The mortgage company was indebted to petitioner in the amount of $29,500. In satisfaction of this debt the mortgage company transferred all of its assets on or about March 28, 1938, to petitioner and to petitioner's nominee, the Union Company. The mortgage company then dissolved. Immediately after these transactions, Northwest Bancorporation, which held controlling stock ownership in the Stock Yards Mortgage Company, held the same

position with reference to the petitioner and the Union Company. At the time of the transfer of the farms from the Stock Yards Mortgage Company to the petitioner, the value of each farm was equal to the consideration received by the petitioner at the sales in 1939. Neither the petitioner nor the mortgage company reported loss or gain on the transfer in its income tax return for 1938. Until December 31, 1937, the mortgage company carried the farms on its books at the values assigned to them by petitioner in computing its loss on the sales by it in 1939. On December 31, 1937, the mortgage company charged off all of its real estate, including the McBride and Stebbens farms, then carried on its books at an aggregate of $70,773.18, and revalued all of its real estate at $33,381.53. The last sum mentioned was not allocated on the mortgage company's books among the separate parcels of real estate owned by it. It is impossible to tell from the record the book value assigned to either the Stebbens or the McBride farms by the mortgage company at the time of the transfer to petitioner.

On the hearing in the Tax Court on its petition for a redetermination of the deficiency, petitioner contended that its basis for the determination of gain or loss on the sale of the farms was the same as the basis in the hands of the mortgage company, relying upon section 113(a) (7) (B) of the Revenue Act of 1938 [1] 26 U.S.C.A. Int.Rev. Acts, page 1050, and upon section 112(g) (1) (C) of the Act, as amended retroactively by section 213(g) of the Revenue Act of 1939, 26 U.S.C.A. Int.Rev.Acts.[2] Respondent contended that petitioner's basis for determination of gain or loss on the sale of the farms was the fair market value thereof on the date upon which the farms were acquired by the petitioner; and, in the alternative, that, if the basis

[1] "Sec. 113. Adjusted basis for determining gain or loss.

"(a) Basis (unadjusted) of property.— The basis of property shall be the cost of such property; except that—* * *

"(7) Transfers to corporation.—If the property was acquired—* * *

"(B) in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law ap-

plicable to the year in which the transfer was made. * * *"

[2] "Sec. 112. Recognition of gain or loss. * * *

"(g) Definition of reorganization [as amended by Section 213(g) of the Revenue Act of 1939].

"(1) The term 'reorganization' means * * * (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred * * *."

should be other than the fair market value at the date of acquisition and if it should appear that a loss was sustained in 1939 by the petitioner upon the sale of the farms, then the loss was a capital loss limited by section 117(d) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1062, and not an ordinary loss deductible in full.

The parties stipulated that the only issues for determination by the Tax Court were: (1) What is the petitioner's basis for computing gain or loss on the sales in 1939 of the McBride and Stebbens farms? and (2) If petitioner sustained a deductible loss on said sales in 1939, is the amount thereof allowable in full as an ordinary loss, or is it a capital loss allowable as a deduction only to the limited extent permitted by section 117(d) of the Revenue Act of 1938? At the first trial the Tax Court reached the conclusion that petitioner had failed to establish its contention that it acquired the farms through a reorganization as defined in section 112 of the Revenue Act of 1938, since, although the evidence showed that the Stock Yards Mortgage Company had transferred "all or a part of its assets" to petitioner, it failed to show that "immediately after the transfer the transferor or its shareholders or both" were in control of the corporation to which the assets were transferred as required by section 112(h).[3] Accordingly, the deficiency determined by the respondent was sustained.

On the motion of petitioner, supported by affidavit showing that there was no dispute between petitioner and respondent concerning the fact of control of the petitioner by Northwest Bancorporation within the meaning of section 112 of the Act, the Tax Court granted a rehearing and permitted petitioner and respondent to stipulate the facts pertinent to decision of the question. This was done, and on consideration of the stipulation, the Tax Court found that petitioner's claim of acquisition of the farms through a corporate reorganization was sustained. It concluded, however, that the evidence on behalf of the petitioner was insufficient to establish the basis of the Stock Yards Mortgage Company for computation of gain or loss on the sale of the farms, and hence insufficient to establish the basis for such computation on the sales by petitioner. It again affirmed the Commissioner's determination. Petitioner's motion for a rehearing to permit it to offer evidence to prove its basis in conformity with the Tax Court's decision was denied.

Since petitioner claimed a deduction from its income for the year 1939, it was under the burden of proving facts necessary to establish its right to take the deduction claimed, and also under the burden of proving the amount of the deduction. Bennett v. Commissioner, 8 Cir., 139 F.2d 961, 963; Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991. That is to say, in this case the burden of establishing the basis for the computation of petitioner's gain or loss on the sale of the farms was upon the petitioner, and this burden "extends to all adjustments either by way of increase or decrease which must be made" to any established unadjusted basis. § 21.- 01, 3 Mertens Law of Federal Income Taxation, p. 357. Petitioner's contention that "the amount of the basis", as distinguished from the "basis", for the computation of petitioner's gain or loss on the sale of the farms was never in issue is a mere play on words. We agree with the Tax Court that it was impossible to determine from any evidence in the record petitioner's basis for the computation of the loss which it claimed.

Accepting as correct the Tax Court's decision that petitioner acquired the farms through a corporate reorganization,[4] as defined in section 112(g) (1) (C),

---

[3] "Sec. 112. Recognition of gain or loss. * * *

"(h) Definition of control.—As used in this section the term 'control' means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

[4] The respondent attempts to sustain the Tax Court's decision on the ground that the holding that the petitioner acquired the farms through a corporate reorgani-

zation is erroneous. The parties stipulated that the Commissioner's determination was correct if the farms were not acquired by the petitioner through a reorganization. The question is open to consideration here, but we are not prepared to say that the Tax Court's decision on the point is a clear error of law. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. The Tax Court held and the respondent admits that the transaction through which petitioner acquired the farms fulfilled in every respect the literal requirements of the applicable definition of a reorganiza-

petitioner's basis was the same as the basis of the mortgage company, "increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made." (§ 113(a) (7) (B). And because the petitioner's basis under this section is a substituted basis, as defined in section 113(b) (2) (A)[5], adjustments for items chargeable to capital account, obsolescence, and depreciation (§ 113(b) (1) (A) and (B)[6] must be made for the period during which the mortgage company held the farms in order to arrive at the mortgage company's basis when the transfer to petitioner was made. Adjustments of similar nature are required for the period during which petitioner held the farms.

■ The mortgage company was engaged in the business of making and buying and selling mortgages upon real estate. It purchased the McBride farm in 1932 for a price of $3,672.90 at a foreclosure sale under a mortgage loan held by it. It purchased the Stebbens farm in 1922 for a price of $13,230.15 at a foreclosure sale under a mortgage loan held by it. Whether by either of these transactions it sustained a deductible loss does not appear from any evidence in the record. Nor does it appear that the price paid by petitioner for the farms did not cover structures subject to depreciation. But, upon the acquisition of the farms by the mortgage company at the foreclosure sales, its basis for the computation of loss or gain on a subsequent sale of the farms by it was the fair market value of the farms at the time of their acquisition. Bennett v. Commissioner, supra; Helvering v. New President Corporation, 8 Cir., 122 F.2d 92, 96.

If we assume that the mortgage company's unadjusted basis for the determination of loss or gain on the sale of the farms was the amount for which the farms were acquired at the foreclosure sales, there is no satisfactory evidence in the record from which any required adjustments, if necessary, can be made to arrive at its adjusted basis.

---

tion. This fact may not be determinative of the issue in all cases (Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 183, 62 S.Ct. 540, 86 L.Ed. 775), but it is of importance in the determination of the issue. Palm Springs Holding Corporation v. Commissioner, 315 U.S. 185, 188, 62 S.Ct. 544, 86 L.Ed. 785. The ruling is in accord with past decisions of the Tax Court. Peck & Peck v. Commissioner, 42 B.T.A. 651, and see § 20.77, 3 Mertens Law of Federal Income Taxation, p. 268.

[5] "Sec. 113. Adjusted basis for determining gain or loss. * * *

"(b) Adjusted basis.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided. * * *

"(2) Substituted basis.—The term 'substituted basis' as used in this subsection means a basis determined under any provisions of subsection (a) of this section or under any corresponding provision of a prior income tax law, providing that the basis shall be determined—

"(A) by reference to the basis in the hands of a transferor, donor, or grantor * * * * * * * *

Whenever it appears that the basis of property in the hands of the taxpayer is a substituted basis, then the adjustments provided in paragraph (1) of this subsection shall be made after first making in respect of such substituted basis proper adjustments of a similar nature in respect of the period during which the property was held by the transferor, donor, or grantor, or during which the other property was held by the person for whom the basis is to be determined. A similar rule shall be applied in the case of a series of substituted bases."

[6] "Sec. 113. Adjusted basis for determining gain or loss. * * *

"(b) Adjusted basis.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"(1) General rule.—Proper adjustment in respect of the property shall in all cases be made—

"(A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years;

"(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. * * * *"

The petitioner proceeded throughout the case upon the theory that its basis for the Stebbens farm was the amount paid for it at the foreclosure sale in 1922, increased by approximately $1,500 for expenditures, unexplained in the evidence; and that its basis in the case of the McBride farm was the price paid for it at the foreclosure sale in 1932, decreased by approximately $1,000, also without satisfactory explanation in the evidence. Or, to put the matter in another way, petitioner's position throughout the hearing before the Tax Court was that the mortgage company's basis for the determination of loss or gain on the sale of either of the farms by it was the value at which each farm was carried on the books of the transferor until December 31, 1937. Aside from the fact, as petitioner itself admits in its brief, that book value may have little or no relation to fair market value, petitioner failed to sustain the burden upon it to show the required adjustments necessary to establish the mortgage company's basis at the time of the transfer. Furthermore, this basis, whatever it was, was subject to increase by the amount of gain or decrease by the amount of loss recognized to the mortgage company upon the transfer to petitioner, in order to determine petitioner's basis for the computation of the loss which it claims. The fact that the mortgage company in its income tax return for 1938 reported neither loss nor gain upon the transfer does not establish that neither occurred. Since it is impossible to tell from the evidence the mortgage company's adjusted basis for the farms at the time of the transfer to petitioner, it is also impossible to determine whether or not the mortgage company sustained a gain or a loss recognized to it upon the transfer of all its assets to petitioner and petitioner's nominee for a lump-sum consideration.

■ Although the petitioner failed to establish by its evidence the amount of the deduction claimed by it, the opinion of the Tax Court shows that the Commissioner's determination was induced by a clear mistake of law, and was made by the Commissioner and affirmed by the Tax Court without consideration by either of them of the facts necessary to a lawful determination of the deficiency. In these circumstances we think the Tax Court should have granted petitioner an opportunity to establish the facts upon which the determination could be made. Its application to the Tax Court for the opportunity to offer further evidence should have been granted. A deficiency arbitrarily determined and apparently excessive can not be sustained. Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623; Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037; Royal Highlanders v. Commissioner, 8 Cir., 138 F.2d 240, 245; Forrester Box Co. v. Commissioner, 8 Cir., 123 F.2d 225, 229; Adams v. Commissioner, 8 Cir., 110 F.2d 578, 584; National Lumber & Tie Co. v. Commissioner, 8 Cir., 90 F.2d 216, 218; Clements v. Commissioner, 8 Cir., 88 F.2d 791, 793; Saltonstall v. Commissioner, 1 Cir., 148 F.2d 396, 398; Knight Newspapers v. Commissioner, 6 Cir., 143 F.2d 1007, 1009; Andrews v. Commissioner, 2 Cir., 135 F.2d 314, 318, 319.

The Tax Court did not reach the question whether, if petitioner sustained a deductible loss in 1939, the amount thereof was an ordinary loss or a capital loss allowable only to the limited extent permitted by section 117(d) of the Revenue Act of 1938. This question is still open for consideration by the Tax Court.

Reversed and remanded for further proceedings in accordance with this opinion.